the appellate, Ms. Monahan. Good morning, and you may proceed when you're ready. Good morning, your honors. May it please the court, I'm Sarah Monahan, attorney for the appellants in this case, Officers Sean Jones and Logan Kulesa. This is an interlocutory appeal of the district court's order which denied qualified immunity to Officer Jones and Officer Kulesa, and I'm requesting that this course reverse the district court's denial of qualified immunity because the undisputed facts in this case show that Officer Jones and Officer Kulesa's actions did not violate clearly established law in this case. This court does have jurisdiction to reverse the district court's denial of qualified immunity. In this case, the district court found disputed facts on two points, and the record plainly forecloses the district court's finding of a factual dispute on those two points, and this court has held that way. I have a question at that point. Just go ahead and get this issue out there. It sounds to me already in your argument this morning that you're talking about the courts, how the court dealt with facts and disputed facts, the findings of facts that the district court made, and in a qualified immunity appeal, doesn't that create a problem with jurisdiction where the appeal, like this one, we find that the issue that's presented has to do with just that, the court's findings of fact and how the court dealt with disputes of fact, and isn't that something that really we shouldn't even be talking about in a qualified immunity appeal, and we should be talking about only issues of law? Yes. Pursuant to Raines v. Counseling Associates, this court recognizes that where the record plainly forecloses the district court's finding of a material factual dispute, a defendant may pursue an interlocutory appeal of the district court's denial of qualified immunity. The two points where the district court found a disputed fact existed, the record forecloses a factual dispute on those two issues. Just so we're on the same page, you keep referring to the two facts, but can you actually tell me what the two facts you're challenging are? Well, the two points that the district court noted was, number one, whether or not it was objectively reasonable for the officers to believe that Mr. Savage posed an immediate threat after the truck passed them, struck a wall, and came to a stop. The objective reasonableness of the officer's belief in this situation is a legal conclusion, and pursuant to Scott v. Harris, the objective reasonableness of deadly force is a question of law to be decided by the court. Here, in order to decide whether Mr. Savage posed a serious and immediate threat after the truck had driven past the officers, struck a wall, and came to a stop, the relevant and disputed material facts, which were found by the district court, are that the officers were aware that in an attempt to commit a commercial burglary, Mr. Savage had just attempted to run them over, had potentially just fired a shot at them, and he was at this point bent over in a manner where he appeared to be reaching for a weapon, and his hands were not where the officers could see him. It's also a possibility at that point he could have reversed the truck. And based on those facts, it's for the court to determine that the officers were within the standard of deadly force under the Fourth Amendment, and they did have probable cause to believe that Mr. Savage posed an extreme threat of serious physical harm or death to themselves or others, and they were justified in firing their weapons at Mr. Savage at that point. And the district court made every one of those findings, what you just said about him reaching down and all the other ones. You're relying on the district court's actual findings. Those facts, yes, the district court did actually find that those facts were not disputed. And so at that point, under Scott B. Harris, the court should have made a finding as to the objective reasonableness of the force based on those facts. Okay, so now you talked about something being plainly foreclosed by the record, but I'm still trying to get those factual findings, because you mentioned what appears to be a legal question if you're right about the factual findings. What are the factual questions you're going after that are plainly foreclosed by the record? Well, so the court stated that it was a disputed fact as to whether or not it was objectively reasonable for the officers to believe that Savage posed a threat. And so the court was pointing to a legal conclusion. No, I got you. I'm just trying, but that's not subject to the plainly foreclosed by the record. I think we're going around and around, but you said there were two. Is there another one that, like an actual factual finding? Yeah, the first point wasn't an actual factual dispute. It was a legal question. The second thing the district court points to was its statement that the jury must also determine whether it was Kelisa or Jones who effectuated the seizure on Savage. Basically implying that there's a disputed fact as to who's, the bullets from which gun actually struck Mr. Savage in order to effectuate a seizure for Fourth Amendment purposes. And that's not a material factual dispute here with determining... So the court didn't find that fact? Is that what you're saying? The court said it was in dispute as to which officer effectuated the seizure on Jones. Well, you know, as I read the district court's order, it has this beginning background section in which it lays out a chronology of events. Do you think that section of the order constitutes findings of fact by the district court? Yes, that section of the order constitutes findings of fact. Okay, and then later the court said there were issues of material fact remaining. And I guess one way of looking at that is to say that what the court was really saying is viewing this record in the light most favorable to the plaintiff, there are facts that would support recovery. That that's just another way of saying that, kind of a backhanded way of saying that. So I guess my question is, did the court state anything about the chronology of events that you disagree with? No. Okay. So what is the legal issue then that we have before us in this appeal? Well, just briefly with respect to the issue of seizure for purposes of establishing a Fourth Amendment violation, there is no evidence in the record that any of the bullets fired by Officer Jones struck Mr. Savage. And so he should be dismissed from this case based on that alone. There's no evidence showing that he effectuated a seizure on Mr. Jones. So if we were to agree with you, wouldn't we have to look into the record here ourselves? I mean, you say that that's what the record shows. We would have to do some investigation here into the record before the district court in order to find out whether you're right. Don't you agree with that? And my point is that's not what we're supposed to be doing on a qualified immunity appeal. We're supposed to have legal issues that are presented. Yes. And whether or not Officer Jones effectuated a seizure on Mr. Savage is a legal issue that would have to be determined before this court decided that he effectuated an unlawful seizure on Mr. Jones. So that would be something that's part of what this court can determine in this appeal. But we'd have to resolve a factual dispute on exactly that question to figure out who seized the person who was shot. But based on the record before this court, there is no factual dispute because the evidence is presented that only establishes that bullets from Officer Kalesa's gun struck Mr. Savage, not the bullets from Officer Jones' gun. But did the district court find that? Did you just say the district court found that they weren't sure who shot him? That's what the district court said, but that finding, that statement is foreclosed by the record. By what evidence? Just, I'm curious. You're asking us to get into, Judge Shepard's right, you're asking us to get into factual disputes, or potential factual disputes. What evidence plainly forecloses that? The state police findings noted that the bullets that were retrieved from Mr. Savage during the medical examination were all fired from Officer Kalesa's gun. There were no bullets retrieved from Mr. Jones that were fired from Officer Jones' gun. And so, where in the record would we go to verify what you just said? I, it's cited in the factual history in the briefing, and I don't have it in front of me. I mean, would it be like an affidavit from a police department investigator or technician? Would it be in a deposition, for example? It was in the, I believe it's in state police records, and it's also talked about in the ballistics expert report presented by Mr. Savage. What I thought you were going to argue is that we have a video in this case. I thought you were going to argue that whatever the district court did and found, that that video Yes. Shows us exactly what happened, and it is inconsistent with a constitutional violation. Well as far as the factual findings that were set out by the district court, those are all supported by the video, and none of those factual findings support, I'm sorry, none of those factual findings contradict what is in the video. They all support what's in the video, and based on those factual findings and what is shown in the video, it's clear that the force used by Officer Kalisa and Officer Jones in this situation was a justified use of deadly force, and that is based on the United States Supreme Court Plum Hall fee record, which is a case that clearly establishes that the use of deadly force does not become unjustified once the vehicle in this case became disabled, because the extreme threat that was being created by Mr. Savage in this incident, in recklessly attempting to run over the officers, was not neutralized until the officers could see that he was compliant and unarmed, or was secured in their custody. Looking at the video, are you putting a gloss when you say recklessly trying to run him over? It's not, we don't have a perfect video of 360, but what I can tell, both of the officers are on the side of the truck. They ended up on the side of the truck once the truck revved its engine and kind of floored it in their direction. And again, the rev of the engine and floored it, when you see the video, it's a very slow drive around. I guess what I'm saying is even looking at the video, I feel like there are some questions that remain as to whether the characterizations that you presented are factually undisputed. The characterizations as they were described by the officers as to where they were positioned, what they saw, how they felt during the incident, none of those facts as they were described by the officers are contradicted by the video. So the facts with respect to that are not in dispute. I would like to reserve the remainder of my time. I just want to ask one quick question, which is on the bullets, which you said is plainly foreclosed by the record. It's true that only one of the officers was found in the Savage. But my understanding is, based on Savage's ballistic report, that one of the bullets from the other officer may have passed through Savage and gone through him, which means that potentially both of them shot them. Yes. Okay. Well, even if bullets from both guns struck Mr. Savage, the clearly established law shows that they were both objectively reasonable in firing their weapons. Thank you. I have a follow-up question there. In your view of the record, how many shots in totality were fired at and into the truck? With respect to Officer Kalisa, I believe the record shows it was 10 to 15 shots fired within five seconds. Is that one officer? That was Officer Kalisa. I don't think it's clear in the record how many shots were fired by Officer Jones. So 15 plus whatever was fired by Officer Jones. What's your thought about the reasonableness of the number of rounds that were fired into that truck when it's no longer traveling, if it ever was, towards the officers? It was reasonable, and this court has decided a case, which I presented in a 28-J letter, that has very close factual circumstances as the situation here. Are you talking about the 28-J you just submitted yesterday?  The one where the guy's going on a 100-mile-an-hour chase going the wrong way on I-80? Not at the point when the 60 to 70 shots were fired that the court said were reasonable. It was a longer pursuit in that case, but what happened at the end when shots were fired at the vehicle while it was driving away from the officers is applicable here in this case. Officers in that case fired 60 to 70 rounds at the suspect while he was driving away from the officers, not towards bystanders. It was undisputed in that case that some of those shots were fired after the vehicle was disabled and smoking and had come to a complete stop. That was undisputed. There was one deputy who admitted to having firing shots at the vehicle after it had come to a stop and was disabled because he saw the suspect leaning over and it appeared as if he was reaching for a weapon. This court found in that situation all of those shots fired, even though it was 60 to 70, were reasonable and even the shots fired after the truck was disabled were reasonable given the extreme threat that was created by the suspect in the situation. That is applicable here. This suspect, Mr. Savage, had attempted to run the officers over according to the officers. That was their perception. It was reasonable. There's nothing on the video that contradicts their narrative of what occurred from their perspective, while they were there in this incident. They also, after the truck went past, believed that there were bystanders outside of the  There were at least one to two officers in addition to potentially additional bystanders. They both believed that Savage had potentially fired a shot, so reasonable in believing that he may be armed. They were reasonable, according to Plumhoff and according to Lefevre, in believing that this extreme threat that he was placing them in, in this situation, was not neutralized until they could see that he was compliant and unarmed, at the least, or at best, until he was secured in their custody in this situation. Who were these bystanders? Because it was like the car dealership was closed and the video doesn't show anyone else other than officers. I get there might be other officers, but it's not, I don't know, there weren't people looking at cars. The dealership was closed. No, it was at midnight. The dealership was closed, but there were, it is undisputed, there were other officers immediately outside the garage, the door there. And there were the other witnesses on the scene who were the people who reported that the breaking and entering was happening. And there's record evidence that shows they thought that those two people were right outside the garage? The officers? There is record evidence that the officers were immediately outside the garage. Not the officers, the two bystanders who reported it?  I don't know that the record is clear exactly where they were at that point, but I think it's reasonable to think that they were in the area. So in your view, are you saying that if we were to watch that video again, we probably have all watched it, but if we watched it again, we would see these two officers in front of the truck as it was, as it is traveling towards them? Yes. You will not see anything in the video that contradicts their explanation as to what they perceived happening. I thought both officers were on the side, were on the sides of the truck. They positioned themselves initially in front of the truck towards each side of the truck. And once the truck began to move forward in their direction, they moved their positions slightly so that they were each on either side of the truck. And then they opened fire? They opened fire. Officer Jones opened fire when he believed the truck was moving to the exact location where he last saw Officer Kalesa, and he believed he was attempting to run over Officer Kalesa. And Officer Kalesa heard that gunshot, did not know its origin, and believed at that point that the truck was moving towards him and that Savage was attempting to run him over. And that's when he opened fire. Thank you very much for your argument. I'll give you a couple of minutes in rebuttal. You've used up your allotted time. Mr. Jacob, you may proceed. Thank you, Your Honors. This is a very tragic case, a 22-year-old boy who suffered mental illness after playing football and knew that his family was trying to put him in the hospital that night, was afraid, and went into a dealership to try to take a vehicle to get out of town. It's just tragic what happened here. But Your Honors are spot on as far as the court does not have jurisdiction in this case. There are disputes of fact and facts that I think are not actually presented exactly correct here today. First, even opposing counsel in the reply brief, which the court noted indicated that on the reply brief that there was a question as far as questioning plaintiff's own expert as far as who fired the bullet that was missed in the recitation of facts in the brief. There was initially an argument that there's no evidence as to who fired the bullet, but then today we heard that Will Tremont Savage's own expert says, hey, it wasn't Joan, it was Kalesa. There was discussion initially that there's no evidence in the record about who fired the bullet again. But then, yes, the Jonesboro Police investigation actually did find that Kalesa's bullet was the one that caused the fatal injury. But Jones did fire through the door and into, it's believed, into Mr. Savage's leg. So both of them arguably have now seized him. But the real issue here is that we now have two officers who are pointing at each other represented by one attorney. So obviously the dispute of fact can't be resolved here because there's a dispute. One's pointing at the other. We just heard that here today, that Jones should be out. So that means Kalesa is basically throwing Jones under the bus. But Jones also said, or Kalesa said it could be either his bullet or Jones' bullet that did this. But the evidence says just Kalesa. So there are disputes around that the court clearly saw. All of those go to the who and not necessarily the what. Maybe I'm misreading it, which is, could we decide whether there was or was not a seizure as a matter of law, but not decide who seized Savage?  I think you can. Number one, one officer fired through the door, that being Jones into his leg. And number two, the other officer fired through the back window or side window into his back, which is established by Savage's evidence. So the video doesn't show the ballistic evidence. It's not there. The video doesn't show what the officer could actually see, he claims he saw. He said Kalesa says that he saw him leaning forward to try to get a gun, but that's even undermined by the fact that he initially thought that he was being shot at. So is he leaning over for a gun that he already has? But number two, the ballistics evidence says he wasn't leaning over when you shot him. And if you're saying you could see him through the window, then inference in favor of plaintiff says you saw him in an upright seated position with his back towards you when you fired a fatal bullet into his back. In favor of plaintiff, clearly his summary judgment should be denied. Well, I wonder about that. So I tend to agree with you that maybe we could decide the seizure, but it sounds like the reasonability of the seizure is subject to all kinds of factual disputes, and that would be very difficult to decide on this record as a matter of law. I mean, do you agree? No, no problem. I cut you off. And you're correct. The case, the 2024 case that we just had submitted to the court, very different than this situation. As your honor noted, this case, the vehicle's rolling forward, just clearly saying, please let me leave. In that case, they had a two-hour pursuit with a vehicle ramming, a vehicle reversing, going back towards officers, clearly trying to harm the officers. I would agree with you there that it's perfectly reasonable that that man needs to be stopped, period. He can't continue on. But here we have a vehicle that rolled into a wall, and the shooting continues. It wasn't going to drive through the wall. That was pretty clear from the video. He's not trying to reverse. That's clear from the video. He simply rolls slowly into the wall and stops, and the shooting continues. And the record's not clear as to where anybody was outside. I mean, sure, hypothetically, we could just say that there was a baby in the parking lot who may have been brought by an officer off-duty. But the reality is, all we know is there's officers outside, somewhere on the scene. And we know that at some point there was a complaint in there, somewhere on the scene, maybe. We don't even know if they're still there. Well, and I just want to follow up on that, because when I saw the video, it was at a And there may be something to the fact that they jumped out of the way. But that would give justification if they believe that they're getting run over. But that kind of is like a disputed issue of fact, because you're arguing that they're off to the side. So, and you can't really tell conclusively from the video at all, either way, in my opinion. Well, for purposes of this argument, I can even concede, let's say they were towards the front of the vehicle. I'll give you that at least. Jones says he was on the side when he began the fire. Calesa, I believe he indicated that he thought it was going to hit him and began the fire. But as your Honor noted in the video, it's very clear most of his shots were through the side. But the critical piece is that the fatal wound, we know exactly what it is, and it was directly through his back while he's in an upright seated position. That did not get fired from the front of the vehicle. That got fired from the back of the vehicle and from off the back side of the vehicle after the vehicle had already passed him. When the officer says that he could see him, because he says he was leaning forward, well, his credibility is in question. But again, in favor of plaintiff, that means he saw him seated upright when the bullet went through his back. That's a problem here. And the judge noted it. I mean, the judge noted there's all kinds of factual disputes here. We're not even sure, apparently according to, well, I'm not sure which argument, but there's a question as to who even fired the bullet. They're pointing at each other right now. Now yes, I put in a ballistics expert because obviously you need to. Other side can't put one in because then it's officers pointing at each other and didn't reference until I did in our argument, in our brief, the fact that yes, there actually is evidence in the record as far as who fired that fatal bullet. None of which, none of this, the ballistics, none of it, what the officer could see, none of it's on the video. So that's all subject to what the jury's going to believe as far as what these officers said and admitted. Again, I mean, not to belabor the point, I still have time left, but this one, it just feels so obvious to me that the court doesn't have jurisdiction in this case that I'm not even really sure what else I can argue to the court. If the court has any other questions, I'd be happy to entertain them, of course. I think not. Thank you. Thank you very much. Ms. Monaghan, I'll give you a minute to respond. Thank you, Your Honor. This court is bound by the factual findings that were made by the district court. All of those facts that were set out in the factual findings by the district court, this court is bound by. And based on those facts, all of the questions that we have here were already resolved by the district court. But we still do have the video. Which does not blatantly contradict anything in those factual findings. In order to make a reversal on those factual findings, the record has to blatantly contradict the factual findings, or the video has to blatantly contradict it, and it does not do that. While some people think it may not be clear, nothing on that video contradicts the findings that were made. So this court is bound by those findings. And based on those findings, pursuant to Plumhoff v. Rickard and pursuant to Lefevre, the case It was objectively reasonable for both officers to use deadly force in this situation. And that's all my time. Thank you, Your Honors. Thank you, counsel. We appreciate your argument today. The case is submitted. You may stand aside. Thank you, Your Honors.